UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ENERGY ALLIED INTERNATIONAL CORPORATION, *et al*, | } } } | |
| Plaintiffs, | } } | |
| VS. | } | CIVIL ACTION NO. H-08-2387 |
| THE PETROLEUM OIL & GAS CORPORATION OF SOUTH AFRICA, | } } } } | |
| Defendant. | } | |

## OPINION & ORDER

Pending before the Court is Defendant The Petroleum Oil & Gas Corporation of

South Africa ("PetroSA")'s Motion to Dismiss (Doc. 10), and the response and reply thereto.

For the reasons explained below, the Court GRANTS the Motion.

**I.      Background & Relevant Facts.**

This case concerns a deal to develop oil fields in Egypt between a Texas

corporation and an oil company owned by the Republic of South Africa.  The Court finds there is

a lack of subject matter jurisdiction in this case, and the case must be dismissed.  The Defendant

PetroSA is a foreign state immune from suit under the Foreign Sovereign Immunities Act

("FSIA"), 28 USC § 1602 *et seq.* Furthermore, the commercial activity exception to the FSIA

does not apply because this is not a case in which the action is based upon, pursuant to

§ 1605(a)(2), "an act outside the territory of the United States in connection with a commercial

activity of the foreign state elsewhere and that act causes a direct effect in the United States."

PetroSA manages the development of the oil and gas assets of the South African

government, including the exploration for oil and gas onshore and offshore of the Republic of

South Africa and other parts of Africa.  Declaration of Owen Tobias, Head Legal Counsel for

PetroSA (Hereinafter Doc. 41 Exh. 3 at 2.)  PetroSA is wholly owned by the Central Energy Fund, Ltd., which in turn is wholly owned by the President of South Africa, who holds the only non-transferable share of its stock.  *Id.*  PetroSA's budget is submitted to the National Treasury of the Republic of South Africa for approval.  *Id.*  All of PetroSA's profits belong to the South African government.  *Id.*  PetroSA's gross receipts worldwide came to approximately one billion fifty million dollars.  *Id.* at 8.  Of that, PetroSA's gross receipts in Texas came to approximately fifteen million dollars.  *Id.*

Plaintiff Energy Allied Oil & Gas Corporation ("Energy Allied") is the parent company of Plaintiff Cherokee Allied Oil & Gas Corporation ("Cherokee").  Doc.  40 at 6. Pharos Oil ("Pharos") is a corporation affiliated with Energy Allied and Cherokee that was formed to take advantage of the business opportunity that arose among the parties.  In June 2005, Energy Allied and Cherokee Allied proposed to PetroSA to leverage their contacts in Egypt to jointly acquire a minority stake in an Egyptian state-owned company, Geisum.  Doc. 41 Exh. 3 at 3.  After conducting due diligence and negotiations with the Egyptian government, the parties signed a Memorandum of Understanding to that effect, with Pharos, Cherokee and PetroSA intending to own a part of the minority stake the Egyptian government was selling.  *Id.* at 4.  The Egyptian government then decided not to sell Geisum, but instead to solicit bids to jointly develop two concessions, the Geisum and Tawila West Oil Concessions (collectively the "Geisum Concessions" or "Concessions"), owned by Geisum.  *Id.* at 4-5.

Initially Energy Allied, Cherokee, Pharos, (collectively "Plaintiffs") and PetroSA continued in their joint interest and prepared to solicit a bid to develop these concessions.  *Id.* at 5.  Eventually, under PetroSA's name, the parties submitted the winning bid for the Geisum Concessions' development.  Doc. 41 Exh. 2 at 2.  PetroSA's Board, however, voted not to

approve PetroSA's investment in the Geisum and Tawila West Concessions and the bid was

withdrawn.  *Id*.  Plaintiffs filed the instant action in the 151st Judicial District Court of Harris

County, Texas, alleging Breach of Fiduciary Duty, Fraud, Common Law Fraud, Bad Faith and

Promissory Estoppel.  Plaintiffs' basis for these allegations was that PetroSA's withdrawal of the

bid caused them to lose the business opportunity for the Concessions because it was too late to

find a new partner, damaged their reputation, and betrayed the assurances PetroSA made to the

Plaintiffs that they had a deal.  *Id*.  On August 1, 2008, PetroSA removed the case to this Court.

## II.      Analysis.

The Foreign Sovereign Immunities Act of 1976 (FSIA), 28 U. S. C. § 1602 *et*

*seq.*, establishes a comprehensive framework for determining whether a court in this country,

state or federal, may exercise jurisdiction over a foreign state. Under the Act, a "foreign state

*shall* be immune from the jurisdiction of the courts of the United States and of the States" unless

one of several statutorily defined exceptions applies. § 1604 (emphasis added). The FSIA thus

provides the "sole basis" for obtaining jurisdiction over a foreign sovereign in the United States.

*See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434-439 (1989).  The

most significant of the FSIA's exceptions is the "commercial" exception of § 1605(a)(2), which

provides that a foreign state is not immune from suit in any case

> in which the action is based upon a commercial activity carried on in the United
> States by the foreign state; or upon an act performed in the United States in
> connection with a commercial activity of the foreign state elsewhere; or upon an
> act outside the territory of the United States in connection with a commercial
> activity of the foreign state elsewhere and that act causes a direct effect in the
> United States." § 1605(a)(2).

The parties do not dispute that PetroSA is a foreign state under the FSIA because it is a

separate legal entity, a corporation, whose shares are wholly owned by a political subdivision of

the Republic of South Africa and is not a citizen of the United States.  *See* § 1603(b).

Plaintiffs rely only on the third clause of § 1605(a)(2) to argue for an exception to the FSIA. The third clause contains the requirement that the action be based upon an act that causes "a direct effect in the United States."  The parties do not dispute that the causes of action brought by Plaintiffs are based "upon an act outside the territory of the United States." Plaintiffs sue for breach of fiduciary duty, fraud, common law fraud, bad faith and promissory estoppel because they assert there were legally harmed by allegedly committing resources that aided PetroSA to submit the winning bid for the Geisum Concessions in Egypt, only to have PetroSA withdraw that bid.  All the negotiations for the failed deal, as well as the break down of the deal, took place in Egypt, South Africa and England.

Additionally, there is no dispute that the causes of action are "in connection with a commercial activity of the foreign state elsewhere."  The facts of this case concern a "commercial transaction," § 1603(d), between the parties to acquire the Geisum Concessions. This transaction is "commercial" because PetroSA was performing an act peculiar to governmental functions, but acting as a private player. *Republic of Arg. v. Weltover, Inc.*, 504 U.S. 607, 614 (U.S. 1992).

It is a "well-established principle" that "although a party claiming FSIA immunity retains the ultimate burden of persuasion on immunity, it need only present a *prima facie* case that it is a foreign state. If it does, the burden shifts to the party opposing immunity to present evidence that one of the exceptions to immunity applies." *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 847 (5th Cir. Tex. 2000).  Plaintiffs attempt to present evidence that the "act" at issue has a "direct effect" on the United States, but fail.

The Supreme Court addressed the "direct effect" exception in *Weltover*, 504 U.S. 607. In *Weltover*, the plaintiffs held certain Argentine bonds. These bonds required Argentina to

make payment of principal and interest to bondholders in United States dollars. Payment could be made through transfer on the London, Frankfurt, Zurich, or New York market, at the election of the creditor. When the bonds began to mature, Argentina unilaterally extended the time for payment and offered bondholders substitute instruments. The plaintiffs, two Panamanian corporations and a Swiss bank, refused to accept the rescheduling and insisted on full payment, specifying New York as the place where payment should be made. The plaintiffs then brought suit in the United States District Court alleging that Argentina's failure to pay the bonds according to the original terms was a breach of contract. Jurisdiction was alleged under section 1605(a)(2) of the FSIA. The plaintiffs argued that Argentina's refusal to make payment caused a "direct effect" in the United States because payment that was supposed to have been made in New York was not made. The Supreme Court agreed. The Supreme Court stated that "an effect is 'direct' if it  follows 'as an immediate consequence of defendant's . . . activity.'" *Weltover*, 504 U.S. at 618 (citation omitted). After noting that the plaintiffs had designated their accounts in New York as the place of payment, the Court concluded, "Because New York was thus the place of performance for Argentina's ultimate contractual obligations, the rescheduling of those obligations necessarily had a 'direct effect' in the United States: Money that was supposed to have been delivered to a New York bank for deposit was not forthcoming." *Id*. at 619.

Here, as PetroSA points out, Plaintiffs fail to allege that performance was due in the United States.  Although the Supreme Court in *Weltover* did not require performance as the only basis for a finding for direct effect, none of the alternative bases suggested by Plaintiffs satisfies the need for direct effect.

Notably the Supreme Court in *Weltover* refused to adopt the Second Circuit's reasoning that there was direct effect because Argentina's rescheduling of its bonds would detract from

New York's status as a "a preeminent commercial center."  504 U.S. at 618.  Hence, The Court's

holding that a direct effect was an immediate consequence of the act in question.  *Id*.  Plaintiffs

present a similarly attenuated and remote theory of causation, arguing that the direct effect is a

possible oil supply shortage in the United States caused by the failure of the proposed oil deal for

the Geisum Concessions.  As PetroSA points out, however, even were this not too remote a

causal effect, were it true, there is little evidence of how Plaintiffs profits from brokering an

African oil company's development of a Middle Eastern oil concession would necessarily have

an effect in United States.

Furthermore, without explaining the specifics of how their causes of action,

springing forth, as they do, from a deal gone sour in Egypt, England and South Africa, have any

bearing on this fact, Plaintiffs assert that there must be a direct effect because of PetroSA's

multi-million dollar business involvement *generally* with the State of Texas.  Section 1605(a)(2)

requires the direct effect to be produced by the act upon which the action is based.  *See also*

*Stena Rederi AB v. Comision de Contratos del Comite Ejecutivo General del Sindicato*

*Revolucionario de Trabajadores Petroleros de la Republica Mexicana*, S.C., 923 F.2d 380, 387

(5th Cir. Tex. 1991) ("In order to satisfy the commercial activities exception to sovereign

immunity, the commercial activity that provides the jurisdictional nexus with the United States

must also be the activity on which the lawsuit is based.")  Thus, PetroSA's extensive business

dealings with Texas unrelated to Plaintiffs' present suit are irrelevant to the jurisdictional

analysis.

Lastly, Plaintiffs mention in passing that financial hardship is being caused to

The Plaintiffs, United States citizens, an "especial" reason to find a direct effect in this case.

"Financial hardship," however, is too vague a basis for a direct effect.  The focus of extant

jurisprudence has been on the breach of performance due in the United States. *Weltover*, 504 U.S. at 619 (failure to make payment on Bonds at New York bank a direct effect); *Callejo v. Bancomer, S.A.*, 764 F.2d 1101 (5th Cir. 1985) (failure of Mexican bank to make interest payments to Texas bank a direct effect); *Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887 (5th Cir. 1998) (failure of Bank of China to wire funds into Houston bank a direct effect); *Peterson v. Royal Kingdom of Saudi Arabia*, 416 F.3d 83, 91 (D.C. Cir. 2005) (performance not necessarily due in United States, so no direct effect). In analyzing whether performance was due in the United States, courts have discounted loss to United States citizens on its own as insufficient proof of direct effect. *Voest-Alpine*, 142 F.3d at 887 n. 11; *Wahba v. Nat'l Bank of Egypt*, 457 F. Supp. 2d 721, 734 (E.D. Tex. 2006).

Plaintiffs, who bore the burden of proof on the exception, failed to present facts showing such a direct effect. The § 1605(a)(2) exception is inapplicable. No other exception is made to PetroSA's immunity from suit. The Court, therefore, lacks subject matter jurisdiction to hear the present action and must dismiss it.

**III.    Conclusion.**

Accordingly, it is hereby ORDERED that PetroSA's Motion to Dismiss (Doc. 10) is GRANTED.

SIGNED at Houston, Texas, this 4th day of September, 2009.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE